IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DIANE M. GARRITY, PAUL G. GARRITY, ) <br> JR., and PAUL M. STERCZALA, as ) <br> fiduciaries of the estate of Paul G. Garrity, Sr., ) <br> deceased, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. 3:15-cv-243 <br><br> Hon. Michael P. Shea |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE SCHEDULING ORDER AND TO PERMIT THE DEFENDANTS TO AMEND THEIR ANSWER TO INCLUDE A COUNTERCLAIM**

The plaintiff United States of America submits this brief in opposition to the *Defendants' Motion to Modify the Scheduling Order and to Permit Defendants to Amend Their Answer to Include a Counterclaim* (Docket No. 40). As discussed in detail below, the defendants' motion to add a counterclaim should be denied for two primary reasons. First, the defendants' amendment would be futile since they lack standing to bring the counterclaim under 26 U.S.C. § 7431(a)(1); that statute waives sovereign immunity only for the individual taxpayer, not his estate. Second, even if the defendants had standing to bring the counterclaim, the Court should not allow the amendment because it would unduly prejudice the government. The amendment seeks to add a permissive counterclaim, which will significantly expand the scope of discovery and delay the original action, for alleged damages that are unlikely to exceed $2,000. And the addition of the counterclaim would not lead to any judicial efficiency, as the government would likely seek a separate trial on the counterclaim, to prevent any unfair prejudice to the government and possible confusion on the part of the jury.

**Background**

The government filed this suit to collect an outstanding civil penalty (commonly referred to as an FBAR penalty) assessed against Paul G. Garrity, Sr., pursuant to 31 U.S.C. § 5321(a)(5). *See* Compl., Docket No. 1, at 1. Paul G. Garrity, Sr. had died in February 2008. Accordingly, the government filed this suit seeking to collect the FBAR penalty, in the amount of $1,061,181.09 as of February 20, 2015, against the estate of Paul G. Garrity, Sr. ("the Estate"). *Id*. at 7.

The government alleges that, for the calendar year 2005, Paul G. Garrity, Sr. willfully failed to report a foreign bank account in which he had a financial interest and signatory or other authority. *Id*. at 5. The IRS investigated the foreign account as part of an audit of Paul G. Garrity Sr.'s income tax liability for the tax year 2005. *Id*. at 4. The IRS audit began in May 2008, a few months after Paul G. Garrity, Sr. had died. *Id*. at ¶ 18.

The defendants are the fiduciaries of the Estate and have filed a motion seeking to amend the Court's scheduling order so that they can add a counterclaim. *See* Docket No. 40. The counterclaim would be brought under 26 U.S.C. § 7431 and alleges that the IRS violated 26 U.S.C. § 6103, which generally prohibits the unauthorized disclosure of a taxpayer's tax return information. *See* Docket No. 40-2, at 12-22. The defendants allege, in essence, that the IRS violated § 6103 by including Paul G. Garrity Sr.'s tax return information in training materials that were presented to IRS personnel, who did not have a "need to know" the taxpayer information, during an internal training seminar. *Id*. at ¶¶ 88-91, 98. The defendants further allege that the IRS released these training materials to a third party in response to a Freedom of Information Act (FOIA) request. *Id*. at ¶¶ 85-87. The defendants admit that the alleged tax

return information belonged to Paul G. Garrity, Sr. and make no claim that it was return information of the Estate. *See* Docket No. 40, at ¶¶ 4-5; Docket No. 40-2, at ¶¶ 71-73, 91, 95.[1]

### Argument

The Court should deny the defendants' motion to amend the scheduling order to allow them to add a counterclaim. Where the deadline set in the court's scheduling order for amending the pleadings has passed, the movant is required to meet the "good cause" standard imposed by Fed. R. Civ. P. 16(b). *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). To show good cause, the movant must demonstrate "diligence" despite failing to meet the court's scheduling order. *Id*. While the movant's diligence is the primary consideration, a court should also consider "other relevant factors," including "whether allowing the amendment of the pleading at this stage of litigation will prejudice [the nonmoving party]." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Courts may find prejudice to the nonmoving party when the amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 158 (2d Cir. 2011). Similarly, while Fed R. Civ. P. 15(a)(2) instructs that leave to amend pleadings should be granted "freely,"

---

[1] In their motion, the defendants make several allegations that the training materials should have been produced by the government in response to their request for production of documents. While the government disagrees that these materials were responsive to the defendants' discovery request, it does not address that issue in this response because it is not relevant to the relief sought, *i.e.*, amending the scheduling order to add a counterclaim. The defendants also state in their motion that counsel for the United States "were willing to cooperate on the matter, [but] they had no authority over the issue" and that counsel for the United States had "represented … that they cannot produce or search for any further responsive documents without a 'wrongful disclosure' counterclaim." Just to be clear, the government's position is that these training materials are not responsive to the discovery request and otherwise have no relation to this suit. Counsel for the United States should not be forced to waste resources in this suit to chase a claim that is not part of this action.

a court should deny leave to amend where the amendment would be futile or cause undue prejudice to the opposing party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, under either Rule 15 or 16 of the Federal Rules of Civil Procedure, it is appropriate for a court to deny a motion to amend the scheduling order to allow the addition of a counterclaim if the amendment adding the counterclaim would be futile or the addition of the counterclaim would prejudice the opposing party.

Applying these standards, the Court should not permit the defendants to add a counterclaim alleging that the IRS violated 26 U.S.C. § 6103 by wrongfully disclosing the tax return information of Paul G. Garrity, Sr. for two reasons. First, the amendment would be futile as the defendants lack standing to bring a counterclaim pursuant to 26 U.S.C. § 7431. Section 7431 contains a limited waiver of sovereign immunity that permits suit only by the taxpayer to whom the tax return information belonged. The waiver of sovereign immunity does not extend to the taxpayer's estate. Accordingly, only Paul G. Garrity, Sr.—the direct taxpayer—would have had a personal right to bring suit and he was already deceased when the alleged disclosures occurred, so the defendants lack standing to bring a counterclaim under § 7431. Second, even if the defendants had standing under § 7431, the Court should deny the defendants' motion because the addition of the counterclaim would prejudice the government. The counterclaim is permissive, and will significantly expand the scope of discovery, thereby delaying the suit. It would be unduly prejudicial to the government to expand the scope (and cost) of discovery and delay this suit, particularly in light of the fact that, even if the Court accepted the defendants' factual allegations as true, the damages in this case are unlikely to exceed $2,000. The government would also be prejudiced because the addition of the counterclaim would confuse the jury.

**I.     The Estate Lacks Standing to Bring the Counterclaim, and Therefore, the Proposed Amendment is Futile.**

The Court should deny the defendants' motion because the amendment would be futile since the Estate lacks standing to bring an action under the limited waiver of sovereign immunity found in 26 U.S.C. § 7431. The United States, as sovereign, cannot be sued without its consent. *United States v. Dalm*, 494 U.S. 596, 608 (1990) (internal quotations omitted). "A waiver of the [United States'] sovereign immunity must be unequivocally expressed in statutory text, [which] will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted). A limited waiver of sovereign immunity is found in section 7431(a) of the Internal Revenue Code (26 U.S.C.), which states:

> If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, *such taxpayer* may bring a civil action for damages against the United States in a district court of the United States.

(emphasis added). "By [section 7431's] clear terms, only 'such taxpayer' may bring a civil action for unauthorized disclosure." *Clark v. I.R.S.*, 2007 WL 1374742, at *1 (D. Haw. Mar. 1, 2007). As such, "[c]ourts interpreting this provision have uniformly dismissed complaints brought by persons other than the taxpayer either for lack of standing or for failure to state a claim." *Norman E. Duquette, Inc. v. C.I.R.*, 110 F. Supp. 2d 16, 23 (D.D.C. 2000); *see also Ruiz Rivera v. I.R.S.*, 226 F. Supp. 2d 345, 349 (D.P.R. 2002), *aff'd sub nom. Ruiz-Rivera v. I.R.S.*, 93 Fed. App'x 244 (1st Cir. 2004) (corporate officer lacked standing to bring § 7431 action for alleged disclosure of corporation's tax return information). Only the "direct taxpayer" has standing to bring suit under § 7431—a beneficiary of the taxpayer lacks standing even where the beneficiary alleges that her own confidential information was disclosed along with the taxpayer's return information. *See Clark*, 2007 WL 1374742, at *1-2. Even if the claimant is ultimately responsible for paying the

tax, she lacks standing unless she is in fact the taxpayer whose information was disclosed. *See Green v. United States*, 2003 WL 22871931, at *2 (W.D. Okla. Oct. 16, 2003) (rejecting spouse's argument that she could bring a claim under § 7431 for the unauthorized disclosure of tax return information belonging to her deceased husband's estate "because she [was] the person ultimately responsible for the tax").

Here, the defendants have moved for leave to add a counterclaim under 26 U.S.C. § 7431 alleging that the IRS disclosed tax return information without authority; however, the tax return information that was allegedly disclosed belonged to the individual—Paul G. Garrity, Sr. Only Paul G. Garrity, Sr. could bring a civil action against the United States under the express terms of the limited waiver of sovereign immunity granted by § 7431. Accordingly, because the defendants, *i.e.*, the Estate, are not the direct taxpayer, they lack standing to bring a counterclaim under § 7431.

Two federal court cases have addressed whether the taxpayer's estate could maintain an action for the unauthorized disclosure of the taxpayer's information. However, at the outset it is important to note that in both cases the alleged disclosures occurred while the taxpayers were still alive. In this case, by contrast, the alleged disclosures occurred several years after Paul G. Garrity, Sr. died. Thus, in the cases discussed below, the courts had to decide whether the cause of action could survive death, whereas in this case the issue is whether the alleged cause of action could *accrue* after the taxpayer's death.

In *Shapiro v. Smith*, 652 F. Supp. 218, 218 (S.D. Ohio 1986), the court held that the cause of action created by § 7431's precursor statute, which also permitted the recovery of damages for the wrongful disclosure of tax return information, did not survive the death of the plaintiff. There, the taxpayer had filed suit under § 7431's precursor statute, and then died, so the

taxpayer's estate filed a motion to be substituted as the plaintiff. *Id*. The court denied the motion, and stated that the statute "was designed to protect the personal privacy rights of the [taxpayer] and that accordingly once the [taxpayer] dies the primary reason for providing the remedy is gone." *Id*. The court invoked the common-law rule that "actions for invasion of privacy rights do not survive the death of the injured party." *Id*. In noting that the cause of action is personal, the *Shapiro* court specifically rejected the argument that the statute was intended to protect a property right that would survive death and be enforced by the estate. *Id*. at 218-19.[2]

On other hand, the court in *Schachter v. United States*, 847 F. Supp. 140, 141-42 (N.D. Cal. 1993) held that § 7431 conferred property rights that could survive death. In *Schachter*, the taxpayer had filed an action seeking money damages under § 7431. *Id*. at 141. The taxpayer died and his estate moved to substitute. *Id*. The court approved of the taxpayer's argument that the allowance for actual damages by the statute was "an indication that property rights were to be taken into account." *Id.* at 141. Thus, in *Schachter*, a case where the taxpayer could have suffered actual damages because the alleged wrongful disclosure occurred while the taxpayer was alive, the court reasoned that the "property right" created by the statute could survive death.[3]

The *Shapiro* view that an unauthorized disclosure action is a personal right, which does not survive death, is more in accord with the principles underlying sovereign immunity than the

---

[2] In *Shapiro*, the court also rejected the argument that Congress must have intended the cause of action to survive the taxpayer's death in order to deter the IRS; the court recognized that there are criminal penalties that serve as an effective deterrent. 652 F. Supp. at 218. To the extent this Court is concerned that a holding that an estate lacks standing to bring suit alleging a § 6103 violation on behalf of a deceased taxpayer also removes any incentive for IRS employees to comport with § 6103, the government notes that the criminal penalties provided for under 26 U.S.C. § 7213 provide a more than adequate incentive.

[3] In *Schachter*, the court never reached the question whether the plaintiffs in that case could recover statutory damages because the Court found that no § 6103 violation occurred. *Schachter v. United States*, 866 F. Supp. 1273, 1274 (N.D. Cal. 1994), *aff'd,* 77 F.3d 490 (9th Cir. 1996).

*Schachter* approach. As noted above, waivers of sovereign immunity are strictly construed in favor of the government. *See Allied/Royal Parking L.P. v. United States*, 166 F.3d 1000, 1003 (9th Cir. 1999) ("limitations and conditions upon which the [g]overnment consents to be sued must be strictly observed and exceptions thereto are not to be implied") (citations and internal quotations omitted). By the express terms of § 7431, the United States has waived sovereign immunity only for "such taxpayers," *i.e.*, the direct taxpayer to whom the tax return information belonged. As noted by the *Shapiro* court, common-law tort actions for invasion of privacy, which are analogous to a cause of action for the unauthorized disclosure of tax return information, do not survive death. *See* Restatement (Second) of Torts § 652I (Am. Law. Inst. 1977) ("In the absence of statute, the action for the invasion of privacy cannot be maintained after the death of the individual whose privacy is invaded"). Thus, recognizing that § 7431 is a personal right of "such taxpayers" that does not survive death comports with the strict construction of the waiver of sovereign immunity permitting no one but the specific taxpayer to bring suit. *See Allied/Royal Parking L.P.*, 166 F.3d at 1003 (relying on the principle of strictly construing waivers of sovereign immunity to hold that 26 U.S.C. § 7433(a) required that the claimant be "such taxpayer," which prohibited partners from bringing suit in their individual capacities for alleged unauthorized collection activities against their limited partnership); *Clark*, 2007 WL 1374742, at *2 (holding that strict construction of the waiver of sovereign immunity under 26 U.S.C. § 7431 limited the claim to the direct taxpayer). In other words, the taxpayer's estate cannot bring a § 7431 action on behalf of the taxpayer because the estate is not the direct taxpayer, and therefore is not "such taxpayer," as provided for in the express terms used by the waiver of sovereign immunity under § 7431.

Nevertheless, even if the Court were to agree with the analysis in *Schachter*, the facts in that case are inapposite to the case at hand. Here, the taxpayer died before either of the alleged disclosures took place. Accordingly, Paul G. Garrity, Sr. did not have a § 7431 cause of action at the time of his death, so the taxpayer never had a "property right" that could survive death. Therefore, because the defendants lack standing to bring a cause of action under § 7431, the Court should deny their motion because the amendment to add the counterclaim would be futile.

**II.    Allowing the Defendants to Add the Permissive Counterclaim would UndulyPrejudice the Government by Expanding Discovery, Delaying the Action, and Confusing the Jury.**

Even if the defendants had standing to bring the counterclaim, the Court should still deny their motion because the addition of the counterclaim would unduly prejudice the government. As discussed below, the defendants' proposed counterclaim is permissive and is completely unrelated to the subject matter of this suit. As such, the addition of the counterclaim will prejudice the government because it will expand the scope of discovery, thereby delaying the resolution of this action. The Court should not allow this delay and increase in discovery in light of the fact that, assuming the factual allegations were true, the damages from the counterclaim would likely not exceed $2,000. Finally, the addition of the counterclaim will confuse the jury and not lead to any judicial efficiencies. The counterclaim cannot be tried to a jury, so if a § 7431 count became part of the case, the government will likely move for separate trials, or at a minimum, file a motion in *limine* to exclude all testimony pertaining to the counterclaim from the jury. So, in effect there would be two separate trials. Thus, the court should deny the defendants' motion to add the counterclaim.[4]

---

[4] The defendants could file a separate suit, and if they were successful, the costs associated with bringing that action would be recoverable as damages under § 7431(c)(2).

### A.      The defendants' proposed counterclaim is permissive.

As an initial matter, the defendants' proposed counterclaim is merely permissive and not compulsory, despite their assertion to the contrary. The defendants argue that their counterclaim is compulsory because the claims involve a "common nucleus of operative facts." *See* Docket No. 40, at ¶ 14. However, the proposed counterclaim and the government's claim are completely unrelated.

A counterclaim is compulsory only if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). In identifying a compulsory counterclaim, courts "analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). Still, "at some point the essential facts and the thrust of the two claims are so basically different" that the "logical relation" test is not met. *Id.* (internal edits and quotations omitted).

Here, the defendants cannot meet this "logical relation" test because the government's suit to reduce an FBAR penalty to judgment and the defendants' counterclaim alleging a violation of 26 U.S.C. § 6103 are based on completely separate material facts. The government's claim involves a factual dispute over whether Paul G. Garrity Sr. willfully failed to report a foreign bank account by mid-2006. The defendants' counterclaim alleges that, some years later, the IRS wrongfully disclosed tax return information belonging to Paul G. Garrity Sr. There is an obvious temporal distinction between the government's action and the defendants' proposed counterclaim, *i.e.*, several years between the alleged events. More importantly, however, is that the government's suit is focused on actions taken by Paul G. Garrity Sr. while he was alive,

whereas the proposed counterclaim is wholly about actions taken by the IRS in conducting training.

The lack of relationship between the two claims can be seen by comparing the elements of each claim. For the government to prevail in its cause of action it needs to prove: (1) Paul G. Garrity, Sr. was a citizen of the United States; (2) he had a financial interest in, or signatory or other authority over foreign financial account that had a balance that exceeded $10,000 during 2005; (3) Paul G. Garrity, Sr. failed to disclose that foreign financial account; (4) his failure to report was willful; and (5) the amounts of the penalties were proper. *See United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012) (identifying elements of willful FBAR penalty). For the defendants to prevail in their proposed counterclaim, they need to prove: (1) the IRS disclosed tax return information; (2) the disclosure was unauthorized; (3) the disclosure was made "knowingly or by reason of negligence;" and (4) the disclosure was in violation of Section 6103. *Flippo v. United States*, 670 F. Supp. 638, 641 (W.D.N.C. 1987), *aff'd,* 849 F.2d 604 (4th Cir. 1988). Simply put, the facts necessary to determine whether Paul S. Garrity, Sr. willfully failed to report a foreign account have nothing to do with the facts necessary to determine whether the IRS violated 26 U.S.C. § 6103. Accordingly, the defendants' proposed counterclaim is permissive because its essential facts are completely unrelated to the essential facts at issue in the government's suit.[5]

---

[5] In addition, the proposed counterclaim cannot be compulsory under Fed R. Civ. P. 13 because the defendants did not have a mature claim at the time they served their answer. A counterclaim is not compulsory unless the claim matured at the time the party served its pleading. *Tapalian v. Town of Seekonk*, 188 F. Supp. 2d 136, 139 (D. Mass. 2002). A claim has not matured until the "point from which a statute of limitations would run." *Cabrera v. Courtesy Auto, Inc.*, 192 F. Supp. 2d 1012, 1015 (D. Neb. 2002) ("Maturity of a claim is synonymous with accrual; that is, the point from which a statute of limitations would run"). Under § 7431(d), the statute of limitations does not run until the "date of discovery by the [taxpayer] of the unauthorized (continued...)

**B.     The addition of the counterclaim will enlarge the scope of discovery, which will delay resolution of this action.**

Because there is no overlap of essential facts between the government's suit and the defendant's proposed counterclaim, the addition of the proposed counterclaim will significantly increase the scope of discovery and delay the outcome of this action to the prejudice of the government. Courts should deny motions to add permissive counterclaims when adding the counterclaim would prejudice the nonmoving party by requiring additional discovery or delaying the original action. *See Ralli v. Tavern on the Green*, 566 F. Supp. 329, 332 (S.D.N.Y. 1983) ("Addition of a counterclaim is within the court's discretion and is generally permitted if it will not prejudice plaintiff or entail additional discovery which might delay the trial"); *S.E.C. v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 72 (D. Conn. 1988), *aff'd sub nom. S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir. 1989) ("A supplemental, permissive counterclaim should not be allowed where its assertion would prejudice the plaintiff or would confuse or delay the original action").

There is no doubt that the addition of the counterclaim would significantly enlarge the scope of discovery with little to no overlap of potential witnesses. The defendants have alleged two instances of unauthorized disclosure. First, they allege that the IRS created and used training materials containing Paul G. Garrity, Sr.'s tax return information in an internal training class. Second, the defendants allege that the IRS released those training materials in response to a FOIA request. Thus, the potential witnesses for the first alleged act of disclosure might include, by way of example, the person(s) who drafted the training materials, reviewed the training

---

(… continued)
inspection or disclosure." Here, the defendants admit that they did not discover the alleged wrongful disclosure until July 24, 2015, after they had served their answer in this action. *See* Docket No. 40, at ¶ 3. Thus, the defendants did not have a claim at the time they served their pleading and the counterclaim cannot be compulsory.

materials, approved the training materials, provided instruction using the materials, and received instruction on the training materials. Of all of these potential witnesses, the only person that may overlap with the government's action is the revenue agent that audited Paul G. Garrity, Sr.'s 2005 income tax return.

With respect to the second alleged act of disclosure, the potential witnesses include the person(s) who collected materials responsive to the FOIA request, responded to the FOIA request, and reviewed and approved the response to the FOIA request. None of these witnesses would have any role to play in this action but for the proposed counterclaim. In short, if the Court were to allow the defendants to add their proposed counterclaim, the scope of discovery will be significantly increased. Given that discovery closes on June 10, 2016, and the parties still need to schedule several depositions for the government's claim, the addition of the counterclaim and the resulting expansion of the scope of discovery will result in a significant delay.

**C.     The Court should not allow the increase in the scope of discovery and delay of this action for a counterclaim, which as alleged, amounts to $2,000 in damages.**

The Court should not allow a proposed counterclaim that will delay the case and increase the scope (and cost) of discovery, particularly given that, assuming the factual allegations were true, the damages from the counterclaim would likely not exceed $2,000. Section 7431 provides for *either* statutory damages in the amount of $1,000 for each act of unauthorized disclosure, or "the sum of" actual damages plus "in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages." 26 U.S.C. § 7431(c). With respect to statutory damages, the defendants allege, as noted above, two acts of disclosure: (1) tax return information wrongfully disclosed during an IRS training class, and (2)

the IRS disclosed those training materials in responding to a FOIA request. Thus, the maximum statutory damages the defendants could recover are $2,000.[6]

The defendants cannot recover actual damages, despite their unsupported allegation that they "suffered substantial harm," because the taxpayer whose information was alleged to have been disclosed was deceased when the disclosures were allegedly made. Paul G. Garrity, Sr. could not have suffered any actual damages while deceased. Further, the defendants cannot recover punitive damages, because the proposed counterclaim fails to allege any facts suggesting the disclosure was "willful" or "the result of gross negligence," as required by 26 U.S.C. § 7431(c)(1)(B)(ii).

Therefore, without even getting into the defendants' chance of success on the merits—which based on the allegations in the proposed counterclaim seem unlikely—and given that any damages are unlikely to exceed $2,000, it would be prejudicial to the government to allow the defendants to add the counterclaim at this late stage of the case, thereby increasing the scope of discovery and delaying trial.

---

[6] The defendants may argue that the IRS training seminar constitutes a disclosure for each person in attendance. *See e.g., Snider v. United States*, 468 F.3d 500, 508 (8th Cir. 2006) (holding that a single disclosure to multiple people constitutes multiple disclosures). The better authority, however, recognizes that the plain language of the statute is clear–statutory damages can only be awarded for each "*act* of unauthorized inspection or disclosure." 26 U.S.C. § 7431(c)(1)(A) (emphasis added); *see Siddiqui v. United States*, 359 F.3d 1200, 1202-03 (9th Cir. 2004) (noting that "[t]he plain meaning of the language used by Congress in § 6103 supports our focus … on the act of disclosure rather than the number of people who receive unauthorized information," and finding that an IRS special agent's remarks were "effectuated in a single act" and the number of people in the audience "does not change his single disclosure into one hundred separate acts of disclosure").

        **D.**    **The proposed counterclaim will confuse the jury and not lead to any judicial efficiency.**

Finally, the Court should deny the defendants' motion because the addition of the counterclaim to this action will only confuse the jury. In this case, the government requested a jury trial in its complaint, *see* Compl., at 7, and the proposed counterclaim likewise includes a jury demand, *see* Docket No. 40-2, at ¶ 107. However, an action under 26 U.S.C. § 7431 cannot be tried to a jury. *See Christensen v. United States*, 733 F. Supp. 844, 854 (D.N.J. 1990), *aff'd sub nom. Christensen v. C.I.R.*, 925 F.2d 416 (3d Cir. 1991) ("This court determined that I.R.C. § 7431 does not provide for a trial by jury"); *Whittington v. United States*, 2014 WL 2700307, at *1 (W.D. Wash. May 21, 2014) ("With regard to the jury demand, suits pursuant to 26 U.S.C. § 7431 are not subject to jury trials"). Because the proposed counterclaim cannot be tried to a jury, if the Court were to permit the counterclaim, the government would likely move under Fed. R. Civ. P. 42(b) for a separate trial on the counterclaim, to prevent confusion to the jury and possible prejudice to the government's claims, were the jury to think the government had "unclean hands." At a minimum, the government would need to file a motion *in limine* to prohibit the jury from hearing any testimony that relates to the proposed counterclaim as such testimony would only confuse the jury. In effect, there would be two trials and no judicial efficiency.

**Conclusion**

      For the reasons stated above, the Court should deny the defendants' motion to amend the scheduling order to allow them to add a counterclaim.

      Respectfully Submitted,

      CAROLINE D. CIRAOLO
      Acting Assistant Attorney General
      Tax Division, U.S. Department of Justice

      */s/ Carl L. Moore*
      Carl L. Moore
      Steven M. Dean
      Trial Attorneys, Tax Division
      U.S. Department of Justice
      P.O. Box 55, Ben Franklin Station
      Washington, D.C. 20044
      (202) 307-5892 (clm)
      (202) 307-6499 (smd)
      Carl.L.Moore@usdoj.gov
      Steven.M.Dean@usdoj.gov

Local Counsel:

DEIRDRE M. DALY
United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2016, a copy of the foregoing *United States' Response in Opposition to Defendants' Motion to Modify the Scheduling Order and to Permit the Defendants to Amend Their Answer to Include a Counterclaim* was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                                  */s/ Carl L. Moore*
                                                  CARL L. MOORE
                                                  Trial Attorney, Tax Division
                                                  U.S. Department of Justice